IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IMRE and CHRISTIE BENDE | : CIVIL ACTION |
| | : |
| v. | : NO. 15-6301 |
| | : |
| PEACOCK MARITIME SA, SOJITZ MARINE & ENGINEERING CORP., SIMS METAL EAST LLC d/b/a SIMS METAL MANAGEMENT, KESSEL PAVING AND CONCRETE, AND HANJIN SHIPPING CO. LTD. | : : : : : : |

## MEMORANDUM

**KEARNEY, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**April 21, 2016**

Congress requires liability for negligence allegedly causing injuries to a longshoreman during stevedoring operations be governed by a federal workers' compensation act known as the Longshore and Harbor Workers Compensation Act ("Act"). We often must sort out liability when the injured workman sues several parties with some contact with the Vessel. Defendants seeking an early dismissal before discovery bear a heavy burden to show the longshoreman has not, under Fed.R.Civ.P. 8, pleaded their liability under the Act. Given our deference to well pleaded allegations and inferences drawn from those allegations, we deny a Vessel's owner's and operator's motion to dismiss in the accompanying Order subject to discovery.

**I.　　Facts in the Amended Complaint**

On February 28, 2014, Imre Bende and "Defendants were engaged in cargo handling operations of loading and unloading" scrap metal from the hold of the *Hanjin Matsue* (the "Vessel").[1] While performing "cargo handling operations," Bende "was on" an excavator being lifted by the Vessel's gear identified as either a crane or grapple.[2] The crane and grapple are

attached to the Vessel.[3] As the Vessel's "gear" lifted the excavator, it struck the Vessel's coaming[4] causing Bende to fall into the Vessel's hold where he sustained serious injury.[5] At the time of the incident, the Vessel was docked at the Penn Manor Port in Pennsylvania on navigable waters of the Delaware River waterway.[6]

Bende and his wife sued Peacock Maritime SA ("Peacock") and Sojitz Marine & Engineering Corp. ("Sojitz") alleging they violated the Act, 33 U.S.C. §905(b) and a claim for negligence against all Defendants.[7] Mrs. Bende brings a consortium claim against all Defendants.

Peacock and Sojitz are the owners and operators of, and "managed, supervised, maintained, repaired, and controlled," the Vessel and employed the Vessel's Master, Officers and Crew.[8] Bende does not identify his employer, alleging only he "is a worker engaged in maritime employment."[9]

II.   Analysis

Peacock and Sojitz move to dismiss the Amended Complaint primarily arguing the Bendes cannot state a claim under the Act.[10] Section 905(b) of the Act provides an injured longshoreman with an exclusive remedy for the negligence of a "vessel."[11] In *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, the Supreme Court identified three duties a shipowner owes to longshoremen under §905(b) of the LHWCA: (1) a "turnover duty"; (2) an "active operations duty;" and (3) a "duty to intervene."[12]

In response, the Bendes concede their Amended Complaint "does not allege Peacock/Sojitz violated their turn-over duty," but assert they sufficiently plead violations of the "active operations duty" and the "duty to intervene."[13]

### A. Active Operations Duty

"The active operations duty requires a vessel owner to exercise reasonable care to prevent injuries to longshoremen in the areas of the ship over which the vessel remains in active control after stevedoring operations have begun."[14] To trigger the active operations duty, the vessel "must have substantially controlled or been in charge of (i) the area in which the hazard existed, (ii) the instrumentality which caused the injury, or (iii) the specific activities the stevedore undertook."[15] Our Court of Appeals identified the purpose behind the "substantially controlled" or "in charge of" requirement is to "ensure that the vessel is not held vicariously liable for injuries the stevedore causes and that the active operations duty does not supplant the turnover duty/duty to warn and duty to intervene in areas under the stevedore's control."[16]

To establish a *prima facie* breach of the active operations duty against the vessel, a plaintiff must show: "(1) that the vessel appreciated, should have appreciated, or with the exercise of reasonable care would have appreciated, the condition; (2) that the vessel knew, or should have known, that the condition posed an unreasonable risk of harm to a longshore worker; (3) that a longshore worker foreseeably might fail to (i) either discover the condition or apprehend the gravity and probability of the harm, or (ii) protect himself or herself from the danger; and (4) that the vessel failed to take reasonable precautionary or remedial steps to prevent or eliminate the dangerous condition."[17]

### *Does the Amended Complaint Allege Facts Sufficient to Trigger the Active Operations Duty?*

Peacock and Sojitz argue the Bendes fail to sufficiently allege facts showing Peacock and Sojitz "substantially controlled" or were "in charge of" the area, instrumentality or activity performed by Bende allegedly causing his injury. Peacock and Sojitz argue the Bendes make only conclusory allegations Peacock and Sojitz "had a vessel cargo officer present who

3

participated in vessel cargo operations" and "retained control over the cargo operations."[18] Peacock and Sojitz additionally point to allegations *all* Defendants "engaged in cargo handling operations" on the one hand, but then a contradictory allegation only Defendant Sims "employed a Dock Supervisor who participate in instructing and overseeing the cargo operations."[19] Peacock and Sojitz assert the Bendes fail to identify who among the Defendants actually exercised control over cargo operations, how the control was exercised, and who instructed Bende to perform his tasks, specifically riding the excavator. With regard to the allegation they "had a vessel cargo officer present who participated" in cargo operations, Peacock and Sojitz argue there are no allegations as to how, and to what extent, the officer participated. Simply observing the loading of cargo does not, Peacock and Sojitz argue, constitute active involvement and control triggering the shipowner's duty.

The Bendes argue they sufficiently plead Peacock and Sojitz exercised substantial control over both the "instrumentality" causing Bende's injury and "the activities the stevedore undertook."[20] The Bendes identify the hazardous condition as riding on the excavator which, while being lifted by the Vessel's crane or grapple, struck the coaming causing Bende to fall into the hold. In their opposition, the Bendes elaborate upon the facts and now explain longshoremen unloading scrap metal from the Vessel's hold used the excavator as a means of exiting the hold because scrap metal blocked the "customary means of egress" via the staircase.[21] The Bendes concede this allegation is "perhaps not specifically laid out" in the Amended Complaint.[22] The Bendes further argue they need not specify which of the Defendants were involved in cargo operations because a vessel owner may be liable where it acted jointly with the stevedore, citing *Davis*, and they allege the vessel cargo officer *participated* in – much more than simply observing – cargo operations.[23]

Accepting as true the Bendes' allegations Peacock and Sojitz retained control over cargo operations; had a vessel cargo officer present who participated in cargo operations; the crane or grapple lifting the excavator was attached to the Vessel and part of its "gear"; and "individually or jointly initiated, developed and/or participated in the cargo plan," we find they plausibly give rise to trigger the active operations duty. Our Court of Appeals in *Davis* explained where a "hazard occurs due to the vessel's active operations . . . it no longer is proper for the vessel to defer to the stevedore's expertise in handling cargo."[24] At the motion to dismiss stage, we cannot accept Peacock and Sojitz's factual assertion "control over the ship's cranes, holds and hatches had been turned over to the stevedore."[25] This argument is appropriate for the summary judgment stage, and we cannot, on the face of the Amended Complaint, make such a conclusion. Based on the allegations, it is plausible Peacock and Sojitz actively controlled, or were in charge of, the area, instrumentality or activity performed by Bende at the time of his injury so as to trigger the "active operations" duty.

### *Does the Amended Complaint State a Prima Facie Breach of the Active Operations Duty?*

Peacock and Sojitz argue even if the Amended Complaint sufficiently alleges substantial control over the area, instrumentality or activity where Bende was injured, there are no allegations of any dangerous *condition* of which they knew or should have known and failed to eliminate. Peacock and Sojitz assert the act of riding an excavator while being lifted from the Vessel is not a dangerous "condition" but a "potential[ly] unsafe activity."[26] In any case, Peacock and Sojitz argue, Bende's own negligence in choosing to ride the excavator is the sole cause of his injury and cannot, without an allegation of equipment defect or malfunction of the Vessel's crane, be a dangerous "condition" under the law of this Circuit.

5

We find Peacock's and Sojitz's argument unpersuasive. We do not read the *Davis, Sarauw II*, and *Hurst* cases to distinguish between a dangerous "condition" and a dangerous "activity" as determining applicability of the active operations duty. Under *Scindia*, a vessel may be liable under the active operations duty "if it actively involves itself in the cargo operations and negligently injures a longshoreman, or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation."[27] Following *Scindia*, our Court of Appeals in *Davis* prescribed application of the active operations duty to "to those areas under the vessel's active control, even if the stevedores shares control with the vessel or if at some earlier time the area was under the stevedore's exclusive control."[28]

Having found the Amended Complaint alleges facts making it plausible Peacock and Sojitz actively controlled the area, instrumentality or activity performed by Bende at the time of the accident, we consider whether the Bendes allege the four elements of a *prima facie* claim for breach of the activity operations duty. The Bendes allege Peacock and Sojitz retained control over cargo operations;[29] maintained a vessel cargo officer who participated in cargo operations;[30] had actual knowledge of the dangerous condition of a longshoreman riding an excavator as it was being lifted by vessel gear;[31] had actual knowledge that a longshoreman, such as Bende, in the exercise of "obvious improvident judgment" would fail to correct the dangerous situation;[32] and failed to correct or make safe cargo operations.[33] The Bendes state a claim and we decline to dismiss their claims before the parties fully develop the factual record.

### B. Duty to Intervene

Under *Scindia*, a vessel owner owes no general duty to longshoremen to supervise or inspect stevedoring operations "absent a contract provision, positive law, or custom to the

6

contrary."[34] The Court in *Scindia* found a "duty to intervene" may exist in certain circumstances "where the danger to longshoremen arises from the malfunctioning of the ship's gear being used in the cargo operations."[35] This concept imposes a duty upon the shipowner to intervene and correct any dangerous conditions arising during stevedoring operations when it has "actual knowledge both of the hazard and that the stevedore, in the exercise of 'obviously improvident' judgment, means to work on in the face of it and therefore cannot be relied on to remedy it."[36]

Peacock and Sojitz argue we must dismiss with prejudice the Amended Complaint because the Bendes fail to allege a defect or malfunction in the Vessel or its equipment. Like their argument on the active operations duty, Peacock and Sojitz argue the alleged hazard is the act of riding in an excavator while being lifted out of the hold by the vessel's crane or grapple; an unsafe usage by the stevedore but not a defect or malfunction with the ship's equipment. Peacock and Sojitz argue Third Circuit precedent dictates a duty to intervene in the stevedore's cargo operations may only be imposed where a defect or malfunction in the ship or its equipment creates a hazard, relying on *Derr v. Kawasaki Kisen K.K.*[37] The Bendes respond they adequately allege Peacock and Sojitz had actual knowledge, through their cargo officer who participated in cargo operations, of Bende riding on the excavator while being lifted by the vessel's gear. The Bendes suggest discovery will reveal the primary means of exiting the vessel's hold was by staircase, but the staircase was blocked by scrap metal cargo, thus the only way out of the vessel's hold was to be lifted out.

The parties' arguments turn on whether the duty to intervene is limited only to defective or malfunctioning ship equipment. We begin with the decision of our Court of Appeals in *Derr*. In *Derr*, two longshoremen were injured when cargo fell on them during the unloading of cargo, and each brought claims under §905(b) of the Act alleging the vessels' negligence caused their

injuries.[38] The district court in each case granted directed verdict for the vessels under *Scindia*. With respect to the duty to intervene in cargo operations, the Court of Appeals noted the parameters of such duty "were not fully drawn in *Scindia*," but read *Scindia* narrowly: "The *Scindia* Court was prepared only to hold that if it were proven that the ship knew of the malfunctioning cargo winch that was part of the ship's own gear, and which it might have a duty to repair, there was a basis for imposition of the negligence liability."[39] The Court of Appeals in *Derr* concluded, "[i]t is unlikely that the narrow duty of a ship to intervene to make repairs was intended to extend beyond defective conditions with respect to the ship, its equipment, and gear."[40] Opinions from the district courts following *Derr* analyze the duty to intervene in the context of a malfunction in the ship's equipment. Whether the duty to intervene applies requires a threefold inquiry: "(1) whether there was a malfunction in the ship's equipment, tools or work space; (2) whether the vessel owner knew of this malfunction; and (3) whether the stevedore's conduct was so 'obviously improvident' as to mandate intervention."[41]

Examining the Amended Complaint, we find its allegations are sufficient to state a claim for breach of the duty to intervene, although it is a close call. We are persuaded the Amended Complaint plausibly asserts a duty to intervene, particularly when coupled with the Bendes' assertion cargo in the hold blocked the ship's "staircase."[42] We also consider the case law cited by the parties, and our own research, where the issue of a shipowner's duties under *Scindia* is addressed almost entirely on summary judgment or post-trial stage. Peacock's and Sojitz's factual assertions such as Bende created the alleged dangerous condition "by choosing to ride the hook out of the ship's hold despite the availability of a safe means of egress (the ship's internal ladders) and despite repeated warnings against the practice" and the OSHA investigation report

"surely . . . would have pointed out defects of malfunctions associated with the vessel or its equipment if any had existed" are more properly reserved for summary judgment.

### C. Negligence

Peacock and Sojitz also generally move to dismiss Bende's negligence claim. The scope of the shipowner's duty (negligence) is defined by §905(b) of the Act. There is no separate negligence claim as §905(b) *is* the negligence claim: "In the event of injury to a person covered under this chapter **caused by the negligence of a vessel**, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title . . . The remedy provided in this subsection **shall be exclusive of all other remedies against the vessel** except remedies available under this chapter" (emphasis added).

Peacock and Sojitz do not offer grounds to dismiss the negligence claim other than their arguments under the Act. As we find the Bendes state a claim under the Act, we deny the motion to dismiss the negligence claim.

### D. Loss of Consortium Claim

Peacock and Sojitz seek to dismiss Mrs. Bende's loss of consortium claim as derivative of her husband's claim, arguing because Bende's claims must be dismissed so must Mrs. Bende's claim. As we find Bende's §905(b) claims may move forward at this time, Mrs. Bende's consortium claim may also go forward.

### III. Conclusion

Our deference to a motion to dismiss precludes preliminary dismissal based on the Amended Complaint alone. We deny Peacock's and Sojitz's motion to dismiss in the accompanying Order.

---

[1] Amended Complaint ("Am. Compl.") at ¶ 35 (ECF Doc. No. 32).

[2] *Id.*

[3] *Id.* at ¶¶ 39-40.

[4] "Coaming" is defined as "the raised frame of wood or steel around a hatchway, skylight, or other opening in the deck of a ship to prevent water from running below." Webster's Third New International Dictionary, Unabridged. 2016. Web. 14 Apr. 2016.

[5] Am. Compl. at ¶ 35.

[6] *Id.* at ¶¶ 36, 41.

[7] The other Defendants are Sims Metal East LLC d/b/a Sims Metal Management ("Sims"), Kessel Paving and Concrete ("Kessel") and Hanjin Shipping Co., Ltd. ("Hanjin"). On March 8, 2016, we dismissed Defendants Waste Management of Pennsylvania, Inc. and Port Contractors, Inc. (ECF Doc. No. 39). Sims is a stevedoring company. Hanjin chartered the Vessel from Peacock and/or Sojitz for exporting and/or importing scrap metal. Kessel is a paving and concrete contractor supplying workers for loading and unloading of cargo and a stevedore engaged in loading and/or unloading the Vessel. Peacock, Sojitz, and/or Hanjin contracted with Sims, who in turn subcontracted with Kessel, for the loading and/or unloading of materials on and/or off the Vessel.

[8] Am. Compl. at ¶¶16, 18, 22. Peacock and Sojitz do not dispute they are the owners and operators, respectively, of the Vessel. *See* Brief in support of motion to dismiss at 1 (ECF Doc. No. 43-1).

[9] *Id.* at ¶ 9.

[10] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d

780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010).

[11] Section 905(b) provides:

> "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel ... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

The Act defines "vessel" as "any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner *pro hac vice*, agent, operator, charter or bare boat charterer, master, officer, or crew member." 33 U.S.C.A. § 902(21).

[12] 451 U.S. 156, 167-68 (1981); *see also Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 537 (3d Cir. 1994).

[13] Plaintiffs' response at 3 (ECF Doc. No. 47). The "turnover duty" applies to a shipowner's conduct *before* cargo operations begin, and imposes upon a shipowner "both a duty to provide safe conditions and a corollary duty to warn of known, nonobvious hazards." *Kirsch v. Plovidba*, 971 F.2d 1026, 1028-29 (3d Cir. 1992) (quoting *Scindia*, 451 U.S. at 167).

[14] *Fiocca v. Triton Schiffahrts GmbH*, 530 F. App'x 183, 186 (3d Cir. 2013), *cert. denied*, 134 S.Ct. 908, 187 L.Ed.2d 779 (2014) (citing *Scindia*, 451 U.S. at 167-68).

[15] *Davis*, 16 F.3d at 540 (citations omitted); *see also Serbin v. Bora Corp., Ltd.*, 96 F.3d 66, 71 (3d Cir. 1996).

[16] *Davis*, 16 F.3d at 541.

[17] *Id.* at 541 (citations omitted); *see also Serbin*, 96 F.3d at 71.

[18] Am. Compl. at ¶¶ 44-45.

[19] *Id.* at ¶¶ 35, 50.

[20] Plaintiffs' response at 9-10 (ECF Doc. No. 47).

[21] *Id.* at 9, n.4.

[22] *Id.*

[23] *Id.* at 10.

[24] *Davis*, 16 F.3d at 548.

[25] Reply brief at 2 (ECF Doc. No. 49).

[26] Reply brief at 3, citing *Davis*, 16 F.3d at 535; *Sarauw v. Oceanic Navigation Corp. (Sauraw II)*, 655 F.2d 526 (3d Cir. 1981); and *Hurst v. Triad Shipping Co.*, 554 F.2d 1237, 1252 n.38 (3d Cir. 1977) (ECF Doc. No. 49). The courts did not decide these issues upon a motion to dismiss: *Davis* considered an appeal from a grant of summary judgment to the shipowner; *Sarauw* considered appeals from post-trial motions; and, *Hurst* from directed verdict.

[27] *Scindia*, 451 U.S. at 167.

[28] *Davis*, 16 F.3d at 537.

[29] Am.Compl. at ¶¶ 45, 55(f).

[30] *Id.* at ¶ 44.

[31] *Id.* at ¶¶ 42, 47.

[32] *Id.* at ¶¶ 43, 48.

[33] *Id.* at ¶ 55(c).

[34] *Id.* at 172; *see also Derr v. Kawasaki Kisen K.K.*, 835 F.2d 490, 493(3d Cir. 1987).

[35] *Id.* at 175. *Scindia* involved a winch, part of the ship's gear, being used by the stevedore to lower cargo. *Id.* at 159. The braking mechanism on the winch malfunctioned while lowering cargo causing cargo to fall and hit the longshoreman. *Id.* at 160.

[36] *Fiocca*, 530 F. App'x at 186 (quoting *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1245 (5th Cir. 1997)); *see also Whitfield v. Craigwin Co.*, 727 F. Supp. 183, 185 (E.D. Pa. 1989) (quoting *Scindia*, 451 U.S. at 175).

[37] 835 F.2d 490 (3d Cir. 1987).

[38] *Id.* at 491.

---

[39] *Id.* at 496.

[40] *Id. See also Davis v. Kambara Kisen Co., Ltd.*, C.A. No. 88-7245, 1990 WL 110250, at *2829 (E.D. Pa. July 31, 1990), *aff'd*, 925 F.2d 416 (3d Cir. 1991) (a shipowner may have a duty to intervene "where the danger to the longshoremen arises from the malfunctioning of the ship's gear being used in cargo operations," citing *Derr*); *Mullen v. Hoyu Kaiun Kabushiki Kaisha*, C.A. No. 88-8311, 1990 WL 55090, at *3-*4 (E.D. Pa. Apr. 26, 1990), *aff'd*, 922 F.2d 832 (3d Cir. 1990) (granting summary judgment as a matter of law under *Derr* because the alleged accident did not involve the ship or its equipment).

[41] *Whitfield*, 727 F. Supp. at 185 (citing *Brown v. Philippine President Lines, Inc.*, 704 F.Supp. 606, 609 (E.D.Pa.1989)); *see also Thomas v. Kambara Kisen Co., Ltd.*, C.A. No. 88-7243, 1990 WL 11647, at *1 (E.D. Pa. Feb. 12, 1990) (citing *Brown*, 704 F.Supp. at 609). The Bendes seek to distinguish *Derr*, and cite *Wheelings v. Seatrade Groningen*, 516 F.Supp. 2d 488 (E.D. Pa. 2007). We do not agree *Wheelings* limits *Derr*; *Wheelings* does not cite *Derr*, but its analysis in denying summary judgment focused on "the defective container" and a crew member's failure to notify a supervisor "about an unusual occurrence with the ship's equipment." *Wheelings*, at 503.

[42] Although specific facts regarding the blocked staircase are not pled, Bendes allege negligence in paragraph 55(n) of the Amended Complaint for "failing to provide a safe means and method for longshoreman [sic] such as plaintiff to exit the hold of the vessel."